IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

UNITED STATES,

Plaintiff,

v.

BOYCELIK AMERICA, INC.,

Defendant.

No. 26-03338

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Dated: September 22, 2026
New York, New York

# TABLE OF CONTENTS

Page

CLASSIFICATIONS .......... 1

INTRODUCTION .......... 2

BACKGROUND HISTORY .......... 4

STANDARD OF REVIEW .......... 8

STATEMENT OF ARGUMENT .......... 9

ARGUMENT .......... 11

A. Boycelik Acted with Reasonable Care in Determining Its Classifications and cannot be held liable for negligence under Section 1592(a) .......... 11

1. The correct classification for mattress innerspring units is 9404.10.00 and not 9404.29.90 .......... 11
2. Boycelik acted reasonably in relying upon a customs broker .......... 15
3. The disagreement over the correct classification was a reasonable professional disagreement, not evidence of a lack of reasonable care .......... 16
4. Boycelik acted reasonably when the Government took differing views on the correct classification .......... 18
5. Liquidation is final, so the Government cannot change its classification interpretation and collect additional duties .......... 20

B. The Government did not comply with the procedural requirements of Section| 1592(b) by failing to disclose two material facts .......... 21

1. The Government did not issue a Penalty Determination stating that Boycelik used 9404.10.0000 as the classification for the merchandise .......... 23
2. The Government did not issue a Penalty Determination stating that Boycelik should have used HTSUS 9404.29.90 (uncovered innerspring units), the classification in the Amended Complaint .......... 24

C. The Government is barred from bringing this action as to most entries identified by the Complaint because it did so more than five years after the date of the alleged violation .......... 26

CONCLUSION .......... 28

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A & D Auto Sales, Inc. v. United States*,
748 F.3d 1142 (Fed. Cir. 2014) ....................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................8

*Corus Staal BV v. United States*,
502 F.3d 1370 (Fed. Cir. 2007) ....................23

*Essar Steel, Ltd. v. United States*,
753 F. 3d 1368 (Fed. Cir. 2014) ....................22

*F. Vitelli & Son v. United States*,
250 U.S. 355 (1919) ....................21

*FAG Holding Corp. v. United States*,
744 F. Supp. 2d 1353 (2010) ....................19

*GoPro, Inc. v. United States*,
673 F. Supp. 3d 1349 (Ct. Int'l Trade 2023) ....................8

*Guangzhou Jangho Curtain Wall Sys. Eng'g Co. v. United States*,
181 F. Supp. 3d 1265 (Ct. Int'l Trade 2016) ....................26

*Home Prod. Int'l, Inc. v. United States*,
405 F. Supp. 3d 1368 (Ct. Int'l Trade 2019) ....................21

*Hoshine Silicon (Jia Xing) Indus. v. United States*,
780 F. Supp. 3d 1328 (Ct. Int'l Trade 2025) ....................3

*Juice Farms, Inc. v. United States*,
68 F. 3d 1344 (Fed. Cir. 1995) ....................21

*Keystone Auto. Operations, Inc. v. United States*,
781 F. Supp. 3d 1362 (Ct. Int'l Trade 2025) ....................14

*Mondelez Global LLC v. United States*,
253 F. Supp. 3d 1329 (Ct. Int'l Trade 2017) ....................8, 12, 13, 15

*Papasan v. Allain*,
478 U.S. 265 (1986) ....................8

*Park B. Smith, Ltd. v. United States*,
347 F. 3d 922 (Fed. Cir. 2003) ............ 12

*Pirelli Tyre Co. v. United States*,
638 F. Supp. 3d 1361 (Ct. Int'l Trade 2023)............ 23

*PT Ecos Jaya Indonesia v. United States*,
764 F. Supp. 3d 1364 (Ct. Int'l Trade 2025)............ 13

*United States v. Aegis Sec. Ins. Co.*,
301 F. Supp. 3d 1359 (Ct. Int'l Trade 2018)............ 22

*United States v. Aegis Sec. Ins. Co.*,
422 F. Supp. 3d 1328 (Ct. Int'l Trade 2019)............ 11

*United States v. Am. Cas. Co.*,
49 F. Supp. 3d 1346 (Ct. Int'l Trade 2015)............ 19

*United States v. Greenlight Organic, Inc.*,
419 F. Supp. 3d 1298 (Ct. Int'l Trade 2019)............ 19

*United States v. Jac Natori Co.*,
108 F. 3d 295 (Fed. Cir. 1997) ............ 26

*United States v. Jean Roberts of Cal., Inc.*,
30 C.I.T. 2027 (2006)............ 23

*United States v. Lexjet, LLC*,
822 F. Supp. 3d 1336 (Ct. Int'l Trade 2026)............ 8

*United States v. Nitek Elecs., Inc.*,
36 C.I.T. 1147 (2012)............ 23

*United States v. Nitek Elecs., Inc.*,
844 F. Supp. 2d 1298 (Ct. Int'l Trade 2012), *reconsideration denied*, 36 C.I.T. 1147, *aff'd*, 806 F.3d 1376 (Fed. Cir. 2015)............ 22

*United States v. Optrex Am., Inc.*,
29 C.I.T. 1494 (2005)............ 22

*United States v. Optrex Am., Inc.*,
560 F. Supp. 2d 1326 (Ct. Int'l Trade 2008)............ 17, 19

*United States v. Rago Tires, LLC*,
804 F. Supp. 3d 1357 (Ct. Int'l Trade 2025)............ 11, 16

*United States v. Rayson Global, Inc.*,
794 F. Supp. 3d 1327 (Ct. Int'l Trade 2025)....................20

*United States v. UPS Customhouse Brokerage, Inc.*,
686 F.Supp.2d 1337 (Ct. Int'l Trade 2010)....................8

*United States v. Wanxiang Am. Corp.*,
654 F. Supp. 3d 1279 (Ct. Int'l Trade 2023)....................4, 17

**Statutes**

19 U.S.C. § 1484....................20

19 U.S.C. § 1484(a)....................16

19 U.S.C. § 1484(a)(1)....................16

19 U.S.C. § 1500....................20

19 U.S.C. § 1504....................20

19 U.S.C. § 1514....................21

19 U.S.C. § 1514(a)....................10, 21

19 U.S.C. § 1514(c)(3)....................21

19 U.S.C. § 1592(a)....................10, 11, 21

19 U.S.C. § 1592(a)(1)(A)(i)....................11

19 U.S.C. §§ 1592(a), (d)....................21

19 U.S.C. § 1592(b)....................22, 24, 26

19 U.S.C. §§ 1592(b)(1) & (2)....................9

19 U.S.C. § 1592(b)(1)(A)(iv)....................22, 24

19 U.S.C. § 1592(c)(3)....................11

19 U.S.C. § 1621....................6, 10, 26

28 U.S.C. § 2637(d)....................2, 22

28 U.S.C. § 2640(a)....................8

Customs Modernization Act....................16

North American Free Trade Agreement Implementation Act Title VI .....................16

**Other Authorities**

19 C.F.R. pt. 171, App. B(C)(1) .....................16

19 C.F.R. pt. 171, App. B(D)(6) .....................17

19 C.F.R. § 159.1 .....................20, 21

19 C.F.R. § 173.2 .....................21

Antonin Scalia and Bryan A. Garner, *Reading Law* 42 (2012) .....................27

CBP Ruling NY L83870 (Apr. 21, 2005) .....................14

CIT Rule 12(b)(6) .....................2, 8

H.R. Rep. No 103-361, 1st Sess., pt. 1 (1993) .....................15

H.R. Rep. No. 103-361 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552 .....................17

Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/support (last visited Sept. 17, 2026) .....................13

S. Rep. No. 103-189 (1993) .....................17

U.S. Customs & Border Prot., *Mattresses and Cushions: Hybrids & More of Heading 9404* (webinar, Aug. 26, 2026), https://cbpevents.webex.com/wbxmjs/joinservice/sites/cbpevents/meeting/download/e10c5572f1bf4498b280e4e99646abe7?MTID=mb3f2aca9e0b90dc01814f2e1fcba12fb .....................3

## CLASSIFICATIONS

There are five potential classifications at issue in this litigation. Defendant Boycelik America, Inc. initially classified its merchandise under 9404.10.0000. The Government in turn selected five different classifications through the related Notices of Action, Pre-Penalty Notice, Penalty Notice, and the Amended Complaint: 7326.20.00, 9404.29.90, 9404.29.9013, 9404.29.9087, 9404.60.2050, and 9404.29.90 (uncovered innerspring units). In the Amended Complaint, the Government selected 9404.29.90 (uncovered innerspring units) as the classification it now views as "correct." Am. Compl. ¶ 5. The at-issue merchandise entered the United States between January 5, 2018 and September 26, 2021 and the applicable Harmonized Tariff Schedules for these entries were the 2018 HTSA Basic Edition (published on January 2, 2018) to the 2021 HTSA Revision 7 (published on July 30, 2021). The relevant text of these classifications remained unchanged through different Harmonized Tariff Schedules applicable to these entries.

| | |
|---|---|
| **9404.10.0000** | "Mattress supports; articles of bedding and similar furnishing (for example, mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered: . . . Mattress supports" |
| **7326.20.00** | "Other articles of iron or steel: . . . Articles of iron or steel wire." |
| **9404.29.90** | "Mattress supports; articles of bedding and similar furnishing (for example, mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered: . . . Mattresses: . . . Of other materials: . . . Other" |
| **9404.29.9013** | "Mattress supports; articles of bedding and similar furnishing (for example, mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered: . . . Mattresses: . . . Of other materials: . . . Other . . . Uncovered innerspring units: Of a width exceeding 91 cm, of a length exceeding 184 cm, and of a depth exceeding 8 cm" |
| **9404.29.9087** | "Mattress supports; articles of bedding and similar furnishing (for example, mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with |

springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered: . . . Mattresses: . . . Of other materials: . . . Other . . . Other: . . . Of a width exceeding 91 cm, of a length exceeding 184 cm, and a depth exceeding 8 cm."

**9404.60.2050** This classification does not exist.

## INTRODUCTION

Pursuant to 28 U.S.C. § 2637(d) and CIT Rule 12(b)(6), Defendant Boycelik America, Inc. ("Boycelik"), by and through its attorneys, respectfully moves this Court to dismiss Plaintiff's Amended Complaint against Boycelik for failure to exhaust administrative remedies and for failure to state claims upon which any relief can be granted.

This is a case involving a dispute over classification and whether that dispute can support a finding of negligence. After asserting that multiple different classifications should be used for the very entries in the Amended Complaint, the Government now asserts that one classification is "correct" and that there was no reasonable basis to use another classification (including one of the classifications that the Government itself previously determined was correct). Even if the Court concludes that the Government's latest classification assertion is correct—and as explained below, it should not—caselaw makes clear that good faith professional disagreements should not be characterized as negligence. But that is the very basis for the Government's Amended Complaint.

This case concerns the importation of mattress innerspring units. The defendant, Boycelik, imported types of mattress innerspring units for use in mattresses. The entries at issue occurred during 2018-2021 and all entries were liquidated by August 2022. Well over a year after the last liquidation of these entries (and more than five years after some liquidations), CBP issued a Pre-Penalty Notice asserting Boycelik misclassified the entries. In September 2024, the Government

then issued a Penalty Notice finding Boycelik negligent for using certain classifications. The Government demanded that Boycelik pay what the Government viewed as the actual loss of revenue, but the Government did not assert any additional penalty. Although it did not assert a penalty amount against Boycelik, the Government—attempting to invoke the exception to the statutory finality of liquidations—claimed that Boycelik was negligent in the classifications it used for these entries. The Amended Complaint alleges that Boycelik should have used one subheading for all the entries at issue (the "Subject Entries"). By not using that subheading, according to the Government, Boycelik failed to exercise reasonable care. Am. Compl. ¶ 15.

But the Government itself previously determined—at various times—that multiple different classifications should be used to classify these same entries. During the time of these entries and leading up to the filing of the Amended Complaint, the Government has claimed at multiple points that multiple different classification headings and subheadings should apply to the entries. Now, however, in its Amended Complaint, the Government claims that Boycelik is negligent for not having used the classification subheading that it has finally settled on as "correct." The Government itself switched its view on how these entries should be classified. Despite this—and despite the Amended Complaint's recognition that Boycelik used a classification subheading that the Government itself announced as appropriate—the Government seeks to avoid the finality of its liquidations by characterizing the difference in classifications as negligence rather than as a reasonable disagreement among professionals over classification. And this is in a product classification area which the Government itself has recognized is fraught with "pitfalls" for those classifying the products.[1] U.S. Customs & Border Prot., *Mattresses and Cushions: Hybrids &*

---

[1] This Court can consider materials published by the Government in its review of the Motion to Dismiss. *See Hoshine Silicon (Jia Xing) Indus. v. United States*, 780 F. Supp. 3d 1328, 1333 n.3

*More of Heading 9404* (webinar, Aug. 26, 2026), https://cbpevents.webex.com/wbxmjs/joinservice/sites/cbpevents/meeting/download/e10c5572f1bf4498b280e4e99646abe7?MTID=mb3f2aca9e0b90dc01814f2e1fcba12fb.

## BACKGROUND HISTORY

Although Boycelik disputes the Government's characterization of the relevant facts, Boycelik assumes the truth of the Amended Complaint's factual allegations solely for purposes of this Motion to Dismiss.

Between January 5, 2018 and September 26, 2021, Boycelik imported the Subject Entries into the United States, which included mattress innerspring units entered through "approximately four hundred fifty (450) entries." Am. Compl. ¶ 4, Ex. A.

In March 2021, CBP notified Boycelik that its classification may be incorrect through a Notice of Action. Am. Compl. ¶ 8. The March 16, 2021 Notice of Action is attached to this Motion as Exhibit 1.[2] In the Notice of Action, CBP stated that Boycelik's classification of 9404.10.1000 for Entry Number 8GM00263007 "may be incorrect" and that CBP believed "the correct

---

(Ct. Int'l Trade 2025) (considering documentation published on Custom and Border Protection's website in a motion to dismiss.).

[2] The Court's factual review is usually limited to the four corners of the complaint but may also include "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *See United States v. Wanxiang Am. Corp.*, 654 F. Supp. 3d 1279, 1289 (Ct. Int'l Trade 2023) (citing *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014)). Here, the Amended Complaint references the Government's communications regarding the correct classification. Am. Compl. ¶ 8. The Notices of Action and Penalty Notice attached as exhibits to this Motion are incorporated by reference in paragraphs 8 and 10 of the complaint and integral to the facts underlying the Amended Complaint. These documents provide context to the discussions between Boycelik and the Government regarding the correct classification and Boycelik's reasonable care. These documents are official government communications and the Court should consider them while ruling on this Motion.

classification is 7326.20.00." *See* Exhibit 1. Boycelik responded to CBP's request for information in the March 16, 2021 Notice of Action via email and cited a CBP classification ruling, NY N175898, which classified similar products under 9404.29.9010. Am. Compl. ¶ 8.

About four months later, on July 14, 2021, CBP sent a Second Notice of Action, attached to this Motion as Exhibit 2. In this Notice of Action, CBP stated it reviewed the documentation submitted in response to the March 16, 2021 Notice of Action and determined that 7326.20.00 was the correct classification for Entry Number 8GM00263007, not 9404.10.1000 or 9404.29.9010 as discussed in the March 16, 2021 Notice of Action and response. *See* Exhibit 2. Boycelik then used the classification determined by the Government (7326.20.00), but the Government in its Amended Complaint now states that Boycelik's classification of 7326.20.00 was incorrect. *See* Am. Compl. ¶ 5.

On September 4, 2021, CBP sent a Third Notice of Action, attached to this Motion as Exhibit 3. In this Notice of Action, CBP stated that the classification of the same entry (8GM00263007) was incorrect and the correct classification was 9404.29.90. *See* Exhibit 3.

The Subject Entries liquidated between November 18, 2018 and August 19, 2022. Am. Compl. Ex. A. On December 26, 2022, the Government made its first of multiple requests that Boycelik enter a Statute of Limitations Waiver which pertained to "all U.S. Customs & Border Protection (CBP) entries of mattress springs or similar products filed between January 5, 2018 and September 26, 2021, for a period of 2 (two) years." Boycelik continued to sign subsequent Statute of Limitations Waivers as requested by the Government, the most recent of which was signed on May 13, 2026, and which is attached as Exhibit 4. The May 13, 2026 waiver, contains two separate time periods on which the waiver ends: First, the waiver states an agreement to waive "the period

of limitations contained in 19 U.S.C. § 1621 and any other applicable statute(s) of limitations for a period of sixty (60) days . . . ." Sixty days from the date of the May 13, 2026 execution is July 12, 2026. July 12 was a Sunday, which would place the end of the waiver period on Monday, July 13, 2026. A later sentence in the waiver document states, "[t]he sixty-five (65) day period for this waiver commences on May 19, 2026, the expiration date of the previous waiver executed on March 19, 2026, and extends to and includes July 23, 2026." This second description of the waiver period places the end date on July 23, 2026. *Id.* The Government drafted this waiver document, and the draft version sent to Boycelik's counsel is attached as Exhibit 5.

More than five years after the first entries liquidated and more than twenty-two months after the last entry liquidated, Boycelik received a Pre-Penalty Notice for this case on June 26, 2024, which is attached as Exhibit 6. This Pre-Penalty Notice asserted that the correct classification was "9404.29.90 (13 or 87)" or 9404.60.2050 (a classification that is not asserted as the correct classification in the Amended Complaint).[3] *See* Exhibit 6. Boycelik America, through its counsel, then submitted a Response to the Pre-Penalty Notice on August 21, 2024.

On September 30, 2024, CBP issued a Penalty Notice, which is attached as Exhibit 7. Am. Compl. ¶¶ 10-11.[4] In the Penalty Notice, CBP states that Boycelik "imported 450 entries of mattress bonnell and pocket springs incorrectly classified under 9401.10.0000. The correct

---

[3] This classification is found on page two of the memorandum dated June 21, 2024, which issued from CBP Consumer Products and Mass Merchandising (attached within Exhibit 6).

[4] To dispel confusion, in the Amended Complaint, the Government states the Penalty Notice was issued on September 27, 2024. Am. Compl. ¶¶ 10-11. The attached Penalty Notice in Exhibit 7 reflects the date of issuance as September 30, 2024. *See* Exhibit 7.

subheading for the mattress innerspring units is HTSUS 9404.29.9087."[5] *See* Exhibit 7. Boycelik, through counsel, filed a Petition for Relief on October 24, 2024 and a Supplemental Petition for Relief on November 29, 2024.

The following table identifies the different classifications asserted at different times by the Government for the Subject Entries:

| **Date** | **Document Title** | **Government's Asserted Classification** |
|---|---|---|
| March 16, 2021 | Notice of Action (Exhibit 1) | 7326.20.00 |
| July 14, 2021 | Notice of Action (Exhibit 2) | 7326.20.00 |
| September 4, 2021 | Notice of Action (Exhibit 3) | 9404.29.90 |
| June 21, 2024 | Pre-Penalty Notice Memorandum (Exhibit 6) | 9404.29.90 (13 or 87)<br><br>9404.60.2050 |
| September 30, 2024 | Penalty Notice (Exhibit 7) | 9404.29.9087 |
| July 23, 2026 | Amended Complaint ¶ 5 | 9404.29.90 (uncovered innerspring units)[6] |

The Government filed this lawsuit on July 23, 2026.

---

[5] The Penalty Notice states that Boycelik selected 9401.10.0000, which contradicts the Notices of Action and the Amended Complaint, which state Boycelik classified its merchandise under 9404.10.1000.

[6] This classification, "9404.29.90 (uncovered innerspring units)", is necessarily different than 9404.29.9087 because 9404.29.9087 does not describe "uncovered innerspring units." That parenthetical phrase is a statistical description and only attributed to 9404.29.9005, 9404.29.9013, and 9404.29.9050.

## STANDARD OF REVIEW

The standard of review is de novo, which is required by 28 U.S.C. § 2640(a). *See United States v. UPS Customhouse Brokerage, Inc.*, 686 F.Supp.2d 1337, 1363-64 (Ct. Int'l Trade 2010).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A "claim" requires a cognizable cause of action, *i.e.*, operative facts giving rise to a right to payment or an equitable remedy. *See United States v. Lexjet, LLC*, 822 F. Supp. 3d 1336, 1340 (Ct. Int'l Trade 2026). To be plausible, the complaint need not show a probability of plaintiff's success, but it must demonstrate more than a mere possibility of a right to relief. *Bell Atl. Corp.*, 550 U.S. at 555. Even assuming that all the factual allegations in the complaint are true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Determining the correct classification for imported merchandise entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. *GoPro, Inc. v. United States*, 673 F. Supp. 3d 1349, 1363 (Ct. Int'l Trade 2023). The first step is a question of law. *Id.* As a question of law, this Court reviews it *de novo*. *Id.* Although the second step involves a question of fact, this motion accepts as true the factual allegations made in the Amended Complaint. The Court makes its determination following the General Rules of Interpretation ("GRI"). *Id.* The Court starts with GRI 1 which requires the Court to first "examine the terms of the headings and any relevant section or chapter notes." *Mondelez Global LLC v. United States*, 253 F. Supp. 3d 1329, 1332 (Ct. Int'l Trade 2017) (citing to GRI 1). If the terms of

the heading are not defined in the HTSUS or its legislative history, then the term's correct meaning is its common meaning. *Id.* (citations omitted).

## STATEMENT OF ARGUMENT

The Court should dismiss this case for four reasons. First, the Government has not complied with the statutory mandate that requires the disclosure of all the material facts establishing an alleged violation under Section 1592. *See* 19 U.S.C. §§ 1592(b)(1) & (2). The Government failed to comply with this requirement because the Penalty Notice issued by U.S. Customs and Border Protection ("CBP") contains two material discrepancies with the Government's allegations in its Amended Complaint: (1) The CBP Penalty Notice states that Boycelik used a particular classification code that is different than the classification codes the government now alleges in the Amended Complaint; (2) The CBP Penalty Notice states that one subheading was "correct," but that classification is different than the subheading classification that the Government now alleges as correct in the Amended Complaint. These facts form the very foundation of the Government's determination regarding negligence and they are therefore "material facts" that the statute required the Government to accurately disclose to Boycelik. *See* 19 U.S.C. §§ 1592(b)(1) & (2).

Second, the Government's asserted classification for the products listed in the Amended Complaint is incorrect as a matter of law. The products identified in the Amended Complaint—mattress innerspring units, *see* Am. Compl. ¶ 4,—should be classified as "mattress supports" rather than "mattresses." Although the Harmonized Tariff Schedule of the United States ("HTSUS") does not define these terms, both dictionary definitions of these terms and their plain meaning support the conclusion that mattress innerspring units are not mattresses, but instead mattress supports.

Third, even if the Government's most recent classification view (as expressed in the Amended Complaint, but not in its other pronouncements) is correct, it was not negligent for

Boycelik to use either of the classifications the Amended Complaint alleges that Boycelik used (7326.20.0090 and 9404.10.0000). As explained below, the Government *twice* communicated in writing to Boycelik that it thought the correct classification was 7326.20.0090. It cannot be negligent—as the Government alleges—to use the very classification that the Government itself asserted as correct. And as noted above, the use of classification 9404.10.0000 ("Mattress supports") is correct or—at the very least—a reasonable classification choice that an importer could decide on after exercising reasonable care. Moreover, as the Amended Complaint recognizes, Boycelik relied on the advice of its customs broker with respect to classification. Am. Compl. ¶ 8. That, too, is an independent basis for concluding that Boycelik exercised reasonable care in its classifications. In short, Boycelik was not negligent and therefore did not violate 19 U.S.C. § 1592(a). All of this leads to the conclusion that the Government has no basis to reliquidate entries that it liquidated years ago. Without any legitimate finding of negligence, the Government cannot upset the statutory mandate that liquidations must remain final. *See* 19 U.S.C. §§ 1514(a); 1592(d).

Finally, for many of the entries at issue, the Government has not filed this action within the five-year statute of limitations set out in 19 U.S.C. § 1621. The Government filed this case on July 23, 2026, which is more than five years after the date of the alleged violation for all entries prior to July 23, 2021. Although Boycelik issued multiple waivers of the statute of limitations at the Government's request, the final waiver expired on July 18, 2026. The written waiver—drafted by the Government and then signed by a representative of Boycelik—actually identifies two different dates for the expiration of the waiver. Because the Government drafted this waiver, ambiguities within the text should be construed against the Government and the earlier of the two dates should govern. The result is that the Government failed to file the case within the five year period allowed

by 19 U.S.C. § 1621 for all entries prior to July 23, 2021. The Court should dismiss the entire case for the reasons above, but the statute of limitations separately requires dismissal with respect to the entries prior to July 23, 2021.

## ARGUMENT

### A. Boycelik Acted with Reasonable Care in Determining Its Classifications and cannot be held liable for negligence under Section 1592(a).

The Government brings this action under Section 1592 which provides that no person may enter merchandise into the United States, by means of any document or electronically transmitted data or information which is material and false because of the negligence of the importer. *United States v. Rago Tires, LLC*, 804 F. Supp. 3d 1357, 1363 (Ct. Int'l Trade 2025) (citing 19 U.S.C. § 1592(a)(1)(A)(i)). When the government seeks a monetary claim based on negligence, the Government has the burden of proof to establish the act or omission constituting the violation. 19 U.S.C. § 1592(c)(3). The Government must demonstrate by a preponderance of the evidence that the materially false act or omission occurred. *United States v. Aegis Sec. Ins. Co.*, 422 F. Supp. 3d 1328, 1345 (Ct. Int'l Trade 2019).

But the Amended Complaint fails to state a claim of negligence upon which relief can be granted because (1) the Government's asserted classification is incorrect; and (2) the Government cannot establish negligence when Boycelik and the Government had a reasonable disagreement over classification.

#### 1. The correct classification for mattress innerspring units is 9404.10.00 and not 9404.29.90.

Boycelik and the Government disagree for purposes of this motion over which of two classification headings/subheadings is the correct classification for mattress innerspring units.

The Government contends that the correct classification is "9404.29.90 (uncovered innerspring units)." Am. Compl. ¶ 5. The heading and subheading for 9404.29.90 provide:

> Mattress supports; articles of bedding and similar furnishing (for example mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered:
> Mattresses: . . .
> Of other materials . . .
> Other[7]

Boycelik, in contrast, contends that the correct classification is 9404.10.00:

> Mattress supports; articles of bedding and similar furnishing (for example mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with springs or stuffed or internally fitted with any material or cellular rubber or plastics, whether or not covered:
> Mattress supports

*Method of Analysis*

"Determination of the parameters of a Customs classification under the HTSUS is a matter of statutory interpretation . . .." *Park B. Smith, Ltd. v. United States*, 347 F. 3d 922, 925 (Fed. Cir. 2003). The "first step" in analyzing a classification issue is to "examine the terms and headings

---

[7] The Government's asserted classification goes a little further and, with its parenthetical, specifies that the classification should fall under one of three statistical suffixes:

Uncovered innerspring units:

| | |
|---|---|
| 9404.29.9005 | For use in a crib or toddler bed |
| 9404.29.9013 | Of a width exceeding 91 cm, of a length exceeding 184 cm, and of a depth exceeding 8 cm |
| 9404.29.9050 | Other |

These provisions, however, are not part of the legal text of the HTSUS, and statistical annotations, including statistical suffixes, do not form the basis for classification of merchandise. *Mondelez Global LLC*, 253 F. Supp. 3d at 1332 (applying GRI 1).

and any relevant section or chapter notes." *Mondelez Global LLC*, 253 F. Supp. 3d at 1332 (applying GRI 1).

*Analysis*

The terms at issue are relatively simple, and the chapter notes and section notes do not define the terms. Both the Government and Boycelik contend that the articles described in paragraph 4 of the Amended Complaint fall under the heading 9404. *See* Am. Compl. ¶ 5. The analysis next moves to the subheadings, which follow the same interpretive methods as headings. *See* GRI 6 ("For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis,* to the above rules, on the understanding that only subheadings of the same level are comparable."). The Court should therefore consider the terms of the two competing subheadings at the same level.

In considering whether "mattress innerspring units," Am. Compl. ¶ 4, are "mattress supports" under subheading 9404.10.00, the Court should consider the individual words of the subheading and how they interact. In the phrase "mattress supports," the noun is "supports," and the word "mattress" acts as an adjective modifying "supports." A "support" is "something that holds up or serves as a foundation or prop." Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/support (last visited Sept. 17, 2026). In the context of an antidumping case, the Department of Commerce recently had occasion to describe the operation of mattress innersprings as a "support" system of the mattress. *PT Ecos Jaya Indonesia v. United States*, 764 F. Supp. 3d 1364, 1370 (Ct. Int'l Trade 2025) (quoting a Department of Commerce scope statement, which provided, "[t]he term 'mattress' denotes an assembly of

materials that at a minimum includes a 'core,' which provides the main *support* system of the mattress and may consist of innersprings . . ..") (emphasis added).

Mattress innerspring units are a type of support; they compress when a load is placed on them to support that load when engaged. That is, the innersprings work to prevent the load's downward trajectory. Innersprings operate in this manner in many applications whether, for example, used in automobile suspension systems or, in this case, mattress systems. The word "mattress" modifies the word "supports" in 9404.10.00 and sets out which type of supports are included: mattress supports. Therefore, "mattress innerspring units," Am. Compl. ¶ 4, are described by "mattress supports." The common understanding of those terms comports with the wording of 9404.10.00.

The Government, however, would classify "mattress innerspring units" as "mattresses." But "mattress innerspring units" are not mattresses. They are parts of mattresses. *See Ashley Furniture Indus., LLC v. United* States, 607 F. Supp. 3d 1210, 1236 (Ct. Int'l Trade 2022) (noting that the Department of Commerce reasonably concluded that pocket coil inner spring units "are an input for a completed mattress and comprise part of the core but are not sold or marketed to take the place of a mattress") (quotation marks and citation omitted). And the wording of 9404 nowhere contains a "parts" provision. *See, e.g.*, CBP Ruling NY L83870 (Apr. 21, 2005) ("Heading 9404, HTS, does not provide for parts of mattresses[.]") This takes "mattress innerspring units" out of classification under 9404.29.90 when they naturally fit the terms of 9404.10.00 as "mattress supports." The interpretive rule of GRI 1 is sufficient to accomplish the classification, which means that the Court need not consult additional General Rules of Interpretation. *See Keystone Auto. Operations, Inc. v. United States*, 781 F. Supp. 3d 1362, 1372 (Ct. Int'l Trade 2025) ("The GRIs are applied in numerical order, and the court may only apply subsequent GRIs if the classification

of the imported goods cannot be accomplished by reference to a preceding GRI."); *Mondelez Global LLC*, 253 F. Supp. 3d at 1332 ("Tariff classification is governed by the General Rules of Interpretation ("GRIs"), which must be applied in numerical order.") (citation omitted).

The plain and common meaning of the terms in heading 9404 and subheadings 9404.10.00 and 9404.29.90 should lead the Court to conclude that subheading 9404.10.00 describes mattress innersprings units. The Government's adherence to 9404.29.90 is incorrect. But the Court need not even reach this conclusion in deciding to dismiss this case. That is because an importer taking reasonable care could reach this conclusion, as Boycelik did, even if the Government concludes that a different classification is correct. The Government itself has asserted multiple different classifications for these entries, which makes its accusation of negligence by Boycelik somewhat ironic.

**2. Boycelik acted reasonably in relying upon a customs broker.**

Throughout the course of importing the Subject Entries, Boycelik relied upon a customs broker for selecting the appropriate classification, which demonstrates reasonable care. The House Report accompanying the Mod Act explains that to "establish a defense of reasonable care, the Committee believes that an importer should consider utilization of one or more of the following aids to establish evidence of proper compliance: . . . consulting with a Customs broker." *See* H.R. Rep. No 103-361, 1st Sess., pt. 1, at 120 (1993). The Amended Complaint acknowledges that Boycelik utilized a customs broker in determining the classification of the Subject Entries. Am. Compl. ¶ 8 ("Boycelik, through its broker, . . . and, as part of the same broker response . . . ."). Boycelik's reliance on the classification provided by its customs broker demonstrates Boycelik acted with reasonable care and is sufficient to dispel the Government's argument that Boycelik was negligent.

**3. The disagreement over the correct classification was a reasonable professional disagreement, not evidence of a lack of reasonable care.**

Boycelik demonstrated reasonable care in its justifications for classification and in its disagreements with CBP regarding the proper classification for its mattress innerspring units. The Customs Modernization Act (the "Mod" Act), enacted under Title VI of the North American Free Trade Agreement Implementation Act, requires importers to use reasonable care when making an entry into the United States. *See* 19 U.S.C. § 1484(a). Importers are required to act with reasonable care when filing the declared classification and rate of duty applicable to the merchandise. 19 U.S.C. § 1484(a)(1).

The Government itself has expressed multiple views on which classification was correct for the Subject Entries. In other words, the Government's own experts held differing views. This proves that responsible professionals can act with reasonable care and come to different conclusions on classification for this merchandise. Boycelik acted with reasonable care during its classifications, even though those classifications sometimes aligned with the Government's changing position and sometimes did not align with the Government's classification views. As demonstrated by the evidence in the Amended Complaint and the attached Notices of Actions, Pre-Penalty Notice, and Penalty Notice, Boycelik and Customs disputed whether several HTSUS codes were applicable, including 9404.10.0000, 7326.20.00, 9404.29.90, 9404.60.2050, "9404.29.90 (13 or 87)" and 9404.29.9087. *See* Exhibits 1-3, 6-7.[8] In determining whether an importer is negligent, the test is whether the importer fails to exercise the reasonable care and competence expected of a person in similar circumstances. *Rago Tires, LLC*, 804 F. Supp. 3d at 1363 (citing 19 C.F.R. pt. 171, App.

[8] The HTSUS Codes at issue in the Notices of Action and Penalty Notice are 9404.10.0000, 7326.20.00, 9404.29.90, 9404.60.2050, "9404.29.90 (13 or 87)" and 9404.29.9087. *See* Exhibits 1-3, 6-7. The Amended Complaint references 9404.10.0000, 7326.20.0090, 9404.29.9010, 9404.29.90 (uncovered innerspring units). Am. Compl. ¶¶ 5, 6, 8.

B(C)(1)). An "honest, good faith professional disagreement as to correct classification" does not constitute negligence. *See, e.g.*, *United States v. Optrex Am., Inc.*, 560 F. Supp. 2d 1326, 1336 (Ct. Int'l Trade 2008) (quoting H.R. Rep. No. 103-361 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2670); *United States v. Wanxiang Am. Corp.*, 654 F. Supp. 3d 1279, 1293-94 (Ct. Int'l Trade 2023) (finding no liability "for classifications based on reasonable differences of opinion").

In *Wanxiang*, this Court considered whether an importer was negligent in applying what the Government alleged were improper classifications. *Id.* This Court explained that to find a Section 1592 claim based on an act, rather than an omission, required a finding of culpability. *Id.* at 1291 ("And even if a statement is material and false, the statement must also have been the result of culpable intent—fraud, gross negligence, or negligence—in order to establish § 1592 liability."). The Court recognized that "the culpability element ensures that [the importer] will not be liable for classifications based on reasonable differences in opinion." *Id.* at 1293. For this Court to find an importer negligent requires a "degree of culpability that exceeds reasonable disagreement between [the importer] and Customs about which HTSUS subheading applies . . .." *Id.* at 1294.

The disagreement between Boycelik and the Government was a reasonable disagreement. First, Boycelik reasonably classified the merchandise under 9404.10.0000 because, as explained above, that is the correct classification. When the government and importer have "an honest good faith professional disagreement" and the disagreement has a "reasonable basis" there is not a lack of reasonable care. *Id.* at 1294 (citing S. Rep. No. 103-189, at 73 (1993)). The disagreement over whether innerspring units should be classified as "Mattress Supports" or "Mattresses" is at the very least a reasonable disagreement and not analogous to classifying snow skis under a water skis classification. *See* 19 C.F.R. pt. 171, App. B(D)(6). "[A]n honest, good faith professional disagreement as to the correct classification of a technical matter shall not be considered to be lack

of reasonable care unless such disagreement has no reasonable basis (e.g., snow skis are entered as water skis)." *Wanxiang Am. Corp.*, 654 F. Supp. 3d at 1294 (citation and quote marks omitted). It cannot be said that Boycelik had no reasonable basis to classify the merchandise as 9404.10.00.

The Amended Complaint further alleges that Boycelik's customs broker switched its view as to whether the classification under 9404.10.0000 was correct. *See* Am. Compl. ¶ 8. Taking that allegation as true for purposes of this motion, it has no relevance as this Court interprets the provision of the HTSUS. First, even as alleged, this switch in position occurred in a context in which the Government asserted that Boycelik was wrong and that a different classification should be applied. (This was a different classification that the Government now claims is correct.) The fact that professionals (the customs broker and CBP officials) were changing their views on classification is evidence that reasonable care was being taken, not an indication of negligence. Second—and more importantly—this Court independently assesses the legal interpretation of HTSUS provisions. Parties may not "waive" the correct interpretation of law as they proceed through an administrative process. The Court—not an importer and not CBP—has the final say on questions of law regarding the HTSUS.

**4. Boycelik acted reasonably when the Government took differing views on the correct classification.**

Boycelik's conduct was reasonable because CBP itself took differing views as to the correct classification of the merchandise. Throughout its handling of the Subject Entries, the Government has proposed six separate "correct" classifications: 7326.20.00 in the March 16, 2021 Notice of Action and July 14, 2021 Notice of Action, 9404.29.90 in the September 4, 2021 Notice of Action, "9404.29.90 (13 or 87)" and 9404.60.2050 in the Pre-Penalty Notice, 9404.29.9087 in the Penalty

Notice, and "9404.29.90 (uncovered innerspring units)" in the Amended Complaint. *See* Exhibits 1-3, 6-7; Am. Compl. ¶ 5.

The Court can consider each of these stated Government views on classification in determining as a legal matter, whether "an honest, good faith professional disagreement as to the correct classification" exists which cannot support a finding of negligence. When considering a motion to dismiss for failure to state a claim, the Court may consider the facts alleged in the pleadings and the documents attached thereto or incorporated by reference. *United States v. Am. Cas. Co.*, 49 F. Supp. 3d 1346, 1348-49 (Ct. Int'l Trade 2015).[9]

Given that the Government has identified six different classifications as the supposedly "correct" classification for Boycelik's entries, Boycelik acted reasonably in disputing the classifications applied to the Subject Entries and also using the very classification the Government told Boycelik to use. The Government's shifting positions underscore the lack of consistency and clarity surrounding the proper classification. Further, there is no case law stating that Boycelik's proposed definition is incorrect. *Cf. Optrex Am. Inc.*, 560 F. Supp. 2d at 1335-36 (finding a lack of

---

[9] Normally, the Court is limited to "acts alleged on the face of a complaint and documents incorporated by reference or appended" to the complaint, however, the Court can also consider "any matters integral to a claim or upon which it is based" without converting the motion to dismiss to a motion for summary judgment. *See FAG Holding Corp. v. United States*, 744 F. Supp. 2d 1353, 1357 n.5 (2010). The Court may consider documents not attached to the complaint when the authenticity of the documents is not in question and the factual allegations of the complaint "revolve around" the documents. *Am. Cas. Co.*, 49 F. Supp. 3d at 1348-49; *see also United States v. Greenlight Organic, Inc.*, 419 F. Supp. 3d 1298, 1301-03 (Ct. Int'l Trade 2019) (considering the pre-penalty notice, the importer's response to the pre-penalty notice, and communications between the importer and CBP in connection with a Section 1592 case). The factual allegations in the Amended Complaint revolve around the Notices of Action and Penalty Notice because the Amended Complaint discusses the dispute between Boycelik and the Government over proper classification. Am. Compl. ¶¶ 5-8. The documents are official government correspondence and directly relate to the disputes referred to within the Amended Complaint.

reasonable care because there was contrary case law from the Federal Circuit stating the importer's classification was incorrect and the importer was aware of this decision).[10] In these circumstances, Boycelik's decision to select its classification reflects reasonable care and a reasonable response to an unsettled classification issue. This cannot be described as unreasonable conduct giving rise to negligence.

**5. Liquidation is final, so the Government cannot change its classification interpretation and collect additional duties.**

Once liquidation becomes final, the Government can no longer revise its classification determination to impose additional duties on Boycelik's entries. Liquidation, by definition, means the "final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1. When goods enter the United States, the importer of record pays an estimated duty based on the customs declaration and entry documentation which assert the good's value, origin, and HTSUS classification. 19 U.S.C. § 1484. CBP then can review and finalize the goods' classification, value, duty rate, and the final amount of duty owed for the imported goods. 19 U.S.C. § 1500. After CBP reviews specific entries, CBP then "liquidates" the entry and notifies the importer of record the final assessed duty, including notifying the importer of record if additional duties are owed or if the importer is entitled to a refund for excess duties paid at importation. 19 U.S.C. § 1504. After the entry is liquidated, the importer can challenge, or "protest", CBP's determination and demand that CBP "reliquidate" the entry to correct for "any clerical error, mistake of fact, or other inadvertence . . . in any entry, liquidation, or reliquidation,

---

[10] There is one non-binding case where this Court referred to 9404.29.90 as the appropriate classification, but in the context of a default judgment, where the importer did not participate in the case and where the allegation of culpability was related to the country of origin. *See United States v. Rayson Global, Inc.*, 794 F. Supp. 3d 1327 (Ct. Int'l Trade 2025). This case is not binding on this Court and was decided long after the Subject Entries in this case.

and, decisions of the Customs Service." 19 U.S.C. § 1514. Protests must be filed "within 180 days after" liquidation. 19 U.S.C. § 1514(c)(3).

CBP does not have the same authority to correct an entry after liquidation. The liquidation process determines CBP's calculation of the final assessed duties and that determination "shall be final and conclusive upon all persons (including the United States and any officer thereof)" unless a protest is filed. 19 U.S.C. § 1514(a); 19 C.F.R. § 159.1; 19 C.F.R. § 173.2 (identifying the limited scope of transactions that may be reviewed and corrected); *Home Prod. Int'l, Inc. v. United States*, 405 F. Supp. 3d 1368, 1372 (Ct. Int'l Trade 2019); *Juice Farms, Inc. v. United States*, 68 F. 3d 1344, 1345-46 (Fed. Cir. 1995). This finality is a "fundamental concept in all U.S. import transactions." *Home Prod. Int'l, Inc.*, 405 F. Supp. 3d at 1372. "Congress long ago adopted [this] principle of finality for liquidation of entries . . . ." *Id.; see also F. Vitelli & Son v. United States*, 250 U.S. 355, 357-58 (1919).

The Subject Entries liquidated between November 18, 2018 and August 19, 2022, which mark the date that the Government assessed the final duties owed. Am. Compl. Ex. A. They are final by operation of 19 U.S.C. § 1514(a) unless some other statutory authority allows reliquidation. Although Section 1592(d) provides an exception to this finality principle, it does so only if there has been a violation of Section 1592(a). 19 U.S.C. §§ 1592(a), (d). In other words, the Government may reassess duties for liquidated entries only if the importer has acted with negligence, gross negligence, or fraud. The Government alleges Boycelik acted negligently, but as demonstrated above, Boycelik acted with reasonable care which negates a negligence claim. Because this is a final decision on the amount of duties owed and the Government lacks the authority to reassess duties for liquidated entries, the Government cannot change position and seek a different duty assessment. 19 U.S.C. § 1514(a); 19 C.F.R. § 159.1.

**B. The Government did not comply with the procedural requirements of Section 1592(b) by failing to disclose two material facts.**

Even if the Government could conclude that Boycelik was negligent—and it cannot for reasons described above—the Court should dismiss the case. The Government may then consider whether further action is appropriate, but it must comply with the required procedures of Section 1592(b). 19 U.S.C. § 1592(b).

Section 1592 sets forth basic procedures and information that must be contained in both the Pre-Penalty and Penalty Notices. 19 U.S.C. § 1592(b)(1)(A)(iv). Specifically, the Government is required to issue a written notice that discloses "all the material facts which establish the alleged violation . . . ." *Id.* This disclosure of material facts ensures that the importer can adequately defend itself against the claims and respond to the Government's notice. Congress designed Section 1592 not only to designate the importer's potential liability in court, but also "to give an importer an opportunity to fully resolve a penalty proceeding before Customs, before any action in this Court." *United States v. Nitek Elecs., Inc.*, 844 F. Supp. 2d 1298, 1307-08 (Ct. Int'l Trade 2012), *reconsideration denied*, 36 C.I.T. 1147, 1153, *aff'd*, 806 F.3d 1376, 1382 (Fed. Cir. 2015) (citing *United States v. Optrex Am., Inc.*, 29 C.I.T. 1494, 1500 (2005)). The inclusion of the statutorily required material, and the provision of an opportunity to be heard, are not trivial matters. *United States v. Aegis Sec. Ins. Co.*, 301 F. Supp. 3d 1359, 1367 (Ct. Int'l Trade 2018).

When the Government fails to comply with these procedures, it fails to exhaust administrative remedies available, which preclude judicial relief. 28 U.S.C. § 2637(d). The doctrine of exhaustion provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Aegis Sec. Ins. Co.*, 301 F. Supp. 3d at 1368 (citing *Essar Steel, Ltd. v. United States*, 753 F. 3d 1368, 1374 (Fed.

Cir. 2014)). While not a jurisdictional requirement, this Court requires the exhaustion of administrative remedies for penalty actions. *See Nitek Elecs., Inc.*, 844 F. Supp. 2d at 1149-50. Section 2637(d) "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Pirelli Tyre Co. v. United States*, 638 F. Supp. 3d 1361, 1375 (Ct. Int'l Trade 2023). The general policy underlying the exhaustion requirement—promoting judicial efficiency—would be impaired if the Court heard arguments for the first time, rather than the agency. *See id.* (citing *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)). Therefore, before seeking judicial relief, the Government "must perfect its penalty claim in the administrative process required by Section 1592 . . . ." *United States v. Nitek Elecs., Inc.*, 36 C.I.T. 1147, 1150 (2012) (citing *United States v. Jean Roberts of Cal., Inc.*, 30 C.I.T. 2027, 2030 (2006)).

1. **The Government did not issue a Penalty Determination stating that Boycelik used 9404.10.0000 as the classification for the merchandise.**

First, the Government has never issued Boycelik a Penalty Determination stating that Boycelik used the classifications in the Amended Complaint. Am. Compl. ¶ 5. The Penalty Notice states as a material fact that Boycelik used 9401.10.0000 as the classification for the Subject Entries. *See* Exhibit 7. ("Boycelik imported 450 entries of mattress bonnell and pocket spring units incorrectly classified under subheading 9401.10.0000. . . ."). In contrast, the Amended Complaint states that Boycelik used two different classifications, 7326.20.0090 and 9404.10.0000. Am. Compl. ¶¶ 5, 8 ("Boycelik falsely classified the innerspring units as mattress supports under Harmonized Tariff Schedule of the United States (HTSUS) subheading 9404.10.0000 (mattress supports), or, in some instances, under HTSUS 7326.20.0090 . . . . ").

Boycelik's proposed classification is a material fact because it bears directly on the reasonableness of Boycelik's conduct and the merits of the classification dispute. The Government used a completely different classification related to under 9401 related "Seats" in the Penalty Notice. *See* Exhibit 7. The Government fails to comply with § 1592(b) when it now asserts that 9404.10.0000 is an improper classification, without issuing a Penalty Notice for this classification.

Further, the theory that 7326.20.0090 was an improper classification was not raised in this important administrative step; the Government omitted this allegation from the Penalty Notice. *See* Exhibit 7. This theory goes directly against the guidance that Boycelik received in the March 16, 2021 and July 14, 2021 Notices of Action. *See* Exhibits 1-2. The Government should not be permitted to advance a new characterization of Boycelik's position for the first time in litigation after preventing full consideration of the issue during the administrative process. The Government should be held to the requirements of § 1592(b).

**2. The Government did not issue a Penalty Determination stating that Boycelik should have used HTSUS 9404.29.90 (uncovered innerspring units), the classification in the Amended Complaint.**

Second, the Government never issued Boycelik a Penalty Determination stating that Boycelik should have used the classification that is identified as the correct classification in the Amended Complaint. *See* Am. Compl. ¶ 5. The Penalty Notice states as a material fact that Boycelik should have classified its goods under 9404.29.9087. *See* Exhibit 7. The Amended Complaint does not reference the classification in the Penalty Notice, but rather points to a different classification as correct. Am. Compl. ¶ 5.

The Government violates the procedures of Section 1592 by failing to provide notice of its proposed classifications in the Amended Complaint through a Penalty Notice. 19 U.S.C. § 1592(b)(1)(A)(iv). Without the opportunity to rebut the Government's current classification,

Boycelik was denied the opportunity to raise an effective argument before CBP regarding why this proposed classification (9404.29.90 (uncovered innerspring units)) is incorrect. The Government inconsistently asserted classifications throughout the penalty determination period and subsequent litigation. First, one of the Government's classifications in the Pre-Penalty Notice Memorandum is not a legitimate classification; 9404.60.2050 does not exist in the applicable Harmonized Tariff Schedules. *See* Exhibit 6. Next, the Government stated 9404.29.9087 was the proper classification in the Penalty Notice. *See* Exhibit 7. In the Amended Complaint, the Government stated that "9404.29.90 (uncovered innerspring units)" was the proper classification. Am. Compl. ¶ 5.

The Government's classification in the Penalty Notice is fundamentally different from the Government's classification in the Amended Complaint. Subheading 9404.29.90 is defined as covering:

> "Mattress supports; articles of bedding and similar furnishing (for example, mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered . . . Mattresses: . . . Of other materials: . . . Other . . . ."

"Uncovered innerspring units" while included as a statistical annotation to 9404.29.90, is only applicable to a subcategory of statistical classifications for this subheading. Those include only 9404.29.9005, 9404.29.9013, and 9404.29.9050. The Government's classification in the Penalty Notice (9404.29.9087) does not reference "Uncovered innerspring units" but instead refers to "Other: . . . Of a width exceeding 91 cm, of a length exceeding 184 cm, and a depth exceeding 8 cm." The Government's inclusion of the phrase "uncovered innerspring units" in the Amended Complaint's classification designates that it did not intend to include *all* subheadings under 9404.29.90, but rather just 9404.29.9005, 9404.29.9013, and 9404.29.9050. But none of these are in the Penalty Notice. *See* Exhibit 7.

The Government seeks to advance a new characterization of Boycelik's position in litigation after preventing full consideration of the issue during the administrative process. The Government failed to exhaust administrative remedies before seeking judicial intervention and is required to raise this material fact, the Government's asserted correct classification, through a Penalty Determination. *Id.*

The Government should have complied with the Section 1592 procedural requirements because, "[a]n agency is bound by the unambiguous, plain meaning of its own regulations." *Guangzhou Jangho Curtain Wall Sys. Eng'g Co. v. United States,* 181 F. Supp. 3d 1265, 1278 (Ct. Int'l Trade 2016) (citations omitted). The Government failed to comply with the procedural requirements under Section 1592(b), which bars this action and requires the Court to dismiss the Amended Complaint and remand the matter to the Government for an opportunity to comply with Section 1592(b) before seeking judicial relief.[11]

**C. The Government is barred from bringing this action as to most entries identified by the Complaint because it did so more than five years after the date of the alleged violation.**

Although the Government sought on multiple occasions to extend the statute of limitations, these waivers of the statute of limitations did not ultimately extend to the date on which the Government filed the initial complaint. "Section 1592 does not contain a limitations period for the recovery of either penalties or lost duties. Instead, the limitations period applicable to section 1592 is found in 19 U.S.C. § 1621." *United States v. Jac Natori Co.*, 108 F. 3d 295, 298 (Fed. Cir. 1997).

[11] Dismissal and remand would effectively operate as a permanent dismissal because the statute of limitations would bar the Government from issuing a corrected Penalty Determination and refiling an action against Boycelik. Had the Government acted earlier, it may have been able to cure any defects and proceed with a new action that complies with the procedural requirements under Section 1592(b). Because the Government waited until the limitations period expired, it will not be able to revive a time-barred claim.

Section 1621 states "[n]o suit or action to recover any duty under section 1592(d) . . . shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered." 19 U.S.C. § 1621. Many of the entries identified by the Amended Complaint and its appraisal worksheet occurred prior to July 23, 2021. Am. Compl. Ex. A. The Government commenced this litigation on July 23, 2026, which is more than five years later than many of entries identified in the Amended Complaint entered the United States.

Throughout the course of the Government's investigation, the Government asked, and Boycelik acquiesced, to sign multiple waivers of the statute of limitations in Section 1621. The Government sent the first request with the Penalty Notice. *See* Exhibit 7. A Boycelik representative signed the last Statute of Limitations Waiver signed on May 13, 2026, and that document determines the end of the waiver period. *See* Exhibit 4. In this waiver, there are two deadlines referenced: July 13, 2026 (60 days after the execution date of May 13, 2026)[12] and July 23, 2026 (65 days after the operative date of May 19, 2026). The Government drafted this waiver; therefore, the ambiguous language should be construed against the Government. This Court considered this exact question in *United States v. Inn Foods, Inc.*, where the court had to consider whether a complaint was timely filed after a waiver of statute of limitations. 264 F. Supp. 2d 1333 (2003), *rev'd on other grounds,* 383 F. 3d 1319 (Fed. Cir. 2004). The issue in *Inn Foods* was the operative date of the waiver agreement. *Id.* at 704. While this Court found that the specific language in *Inn Foods* was unambiguous, it confirmed that had the language been ambiguous, "the Court must construe the language against Customs" as the drafter. *Id.* at 704; *see also* Antonin Scalia and Bryan A. Garner, *Reading Law* 42, 427 (2012) (explaining that under the "venerable principle" an

---

[12] Sixty days from the date of the May 13, 2026 execution is July 12, 2026. July 12 was a Sunday, which would place the end of the waiver period on Monday, July 13, 2026.

ambiguity should be resolved against the party responsible for drafting the document). Here, the duration is ambiguous. The text of the waiver sets out two durations, 60 days from May 13, 2026 and 65 days from May 19, 2026. *See* Exhibit 4. Because the Government drafted this waiver, the Court "must construe the language against Customs" and find the shorter date of 60 days from the date of execution, or July 13, 2026, is the controlling date.[13] *See id.* The Government filed the Complaint on July 23, 2026, which was untimely. While the Court must dismiss the Amended Complaint in its entirety for the reasons set forth above, it additionally must grant the Motion to Dismiss for all entries prior to July 23, 2021 because the Government did not timely initiate this action for these entries.

## CONCLUSION

For the reasons stated above, we respectfully request that the Court dismiss the Amended Complaint with prejudice for failure to exhaust administrative remedies and failure to state a claim upon which any relief can be granted.

---

[13] Sixty days from the May 13, 2026 execution is July 12, 2026. July 12 was a Sunday, which would place the end of the waiver period on Monday, July 13, 2026.

Dated: September 22, 2026

NIXON PEABODY LLP

By: ______________________

John R. Sandweg
jsandweg@nixonpeabody.com
Joseph B. Maher
jmaher@nixonpeabody.com
Katherine E. M. McQuillen
kmcquillen@nixonpeabody.com

799 9th Street NW
Suite 500
Washington, DC 20001-5327
Telephone: 202-585-8000
Facsimile: 202-585-8080

*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE

In accordance with Standard Chambers Procedures, I certify that this Motion to Dismiss has 9,677 words and is within the Word Count Limitations specified by this Court. I prepared this certificate based on the word count of the word-processing system used to prepare the brief.

NIXON PEABODY LLP

By: ______________________
John R. Sandweg
jsandweg@nixonpeabody.com