UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| UNITED STATES,<br>Plaintiff,<br>v.<br>BOYCELIK AMERICA, INC.,<br>Defendant. | Court No. 26-03338 |

# ORDER

Upon consideration of Defendant Boycelik America, Inc.'s Motion to Dismiss, Plaintiff the United States' Response to Defendant's Motion to Dismiss, the Amended Complaint and all other relevant papers and proceedings in this action, it is ORDERED that Defendant Boycelik America, Inc.'s Motion to Dismiss is denied.

Dated: ______________________
New York, New York

______________________
Judge Claire R. Kelly

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| UNITED STATES,<br>Plaintiff,<br>v.<br>BOYCELIK AMERICA, INC.,<br>Defendant. | Court No. 26-03338 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**


JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

ARIE C. EERNISSE
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, NY 10278
Telephone: (202) 598-0904
Email: Arie.Eernisse@usdoj.gov

*Attorneys for Plaintiff*


November 24, 2026

**TABLE OF CONTENTS**

FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 5

I. Standard of Review .......... 5

II. The Statute of Limitations Did Not Expire before the United States Filed its Complaint in this Action .......... 6

III. The Government Processed All Administrative Notices, Petitions for Relief, and Demands for Payment in Accordance with Applicable Laws and Procedures .......... 9

IV. Boycelik Has Not Satisfied Its Burden of Proving It Exercised Reasonable Care in the Entry of Its Merchandise .......... 12

CONCLUSION .......... 15

**TABLE OF AUTHORITIES**

**Cases**

*Amoco Oil Co. v. United States*, 234 F.3d 1374 (Fed. Cir. 2000) .................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 6, 12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................... 6, 12

*Carl v. U.S. Secretary of Agriculture*, 839 F. Supp.2d 1351 (Ct. Int'l Trade 2012)........... 6

*Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329 (Fed. Cir. 2015)....................... 6

*Rundgren v. Washington Mut. Bank, FA*, 760 F.3d 1056 (9th Cir. 2014) ......................... 6

*United States v. Aegis Sec. Ins. Co.,* 398 F. Supp.2d 1354 (Ct. Int'l Trade 2005) ..... 10, 11

*United States v. Franco Tire Distribution, Inc.*, No. 24-00161, 2026 WL 1749520 (Ct. Int'l Trade June 17, 2026)............................................................................... 13

*United States v. Inn Foods*, 264 F. Supp.2d 1333 (Ct. Int'l Trade 2003), *rev'd*, 383 F.3d 1319 (Fed. Cir. 2004)...................................................................................... 9

*United States v. Inn Foods, Inc.,* 560 F.3d 1338 (Fed. Cir. 2009)................................... 11

*United States v. Jac Natori Co.,* 108 F.3d 295 (Fed. Cir. 1997)..................................... 11

*United States v. Katana Racing, Inc.*, 724 F. Supp.3d 1366 (Ct. Int'l Trade 2024)......... 11

*United States v. Katana Racing, Inc.*, 75 F.4th 1346 (Fed. Cir. 2023) ............................ 11

*United States v. Lexjet, LLC*, 822 F. Supp.3d 1336 (Ct. Int'l Trade 2026) ....................... 6

*United States v. Nitek Elecs., Inc.*, 844 F. Supp.2d 1298 (Ct. Int'l Trade 2012), *aff'd*, 806 F.3d 1376 (Fed. Cir. 2015)........................................................................... 6

*United States v. Optrex Am., Inc.*, 560 F. Supp.2d 1326 (Ct. Int'l Trade 2008)......... 13, 14

*United States v. Ross,* 574 F. Supp. 1067 (Ct. Int'l Trade 1983)............................... 10, 12

*United States v. Sterling Footwear, Inc.*, 279 F. Supp.3d 1113 (Ct. Int'l Trade 2017).... 14

**Statutes**

19 U.S.C. § 1484(a)(1) ........ 13

19 U.S.C. § 1592(a) ........ passim

19 U.S.C. § 1592(b) ........ 1, 11, 12

19 U.S.C. § 1592(b)(1), (2) ........ 10

19 U.S.C. § 1592(c) ........ 1, 11

19 U.S.C. § 1592(d) ........ passim

19 U.S.C. § 1621 ........ 4

28 U.S.C. § 2637(d) ........ 12

Subheading 7326.20.0090 ........ 3

Subheading 9404.10.0000 ........ 3, 14, 15

Subheading 9404.29.90 ........ 2, 3, 13

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (4th ed. 2024) ........ 5

CBP Ruling NY N175898 (Aug. 15, 2011) ........ 2, 3, 14

H.R. Rep. No. 95–621 (1977) ........ 11

**Rules**

USCIT Rule 12(b)(6) ........ 1, 5

USCIT Rule 7(d) ........ 1

USCIT Rule 8(a)(2) ........ 5

**Regulations**

19 C.F.R. § 162.79b ........ 3, 10, 11

19 C.F.R. pt. 171, app. B ........................................................................................ 13

19 C.F.R. pt. 171, app. B(J) ........................................................................................ 10

19 C.F.R. pt. 174 ........................................................................................ 14

19 C.F.R. pt. 177 ........................................................................................ 14

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| UNITED STATES,<br>Plaintiff,<br>v.<br>BOYCELIK AMERICA, INC.,<br>Defendant. | Court No. 26-03338 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 7(d) of the Rules of the United States Court of International Trade ("USCIT R.") and the Court's October 16, 2026 order (ECF No. 13), plaintiff, the United States, respectfully submits this response to the USCIT R. 12(b)(6) motion to dismiss (Def. Mot. to Dismiss, ECF No. 9) filed by defendant Boycelik America, Inc ("Boycelik") on September 22, 2026. As we demonstrate below, Boycelik's arguments are not well-taken and the Court should deny the motion.

First, Boycelik's statute of limitations defense is based on a gross misrepresentation of the final waiver of the statute of limitations. The complaint was indeed filed by the waiver end-date. Likewise, Boycelik's arguments based on exhaustion of administrative remedies lead nowhere as, in our complaint, we seek to recover, pursuant to 19 U.S.C. § 1592(d), only the loss of revenue (*i.e.*, lost duties, taxes and fees, plus interest) that resulted from Boycelik's negligent violations of 19 U.S.C. § 1592(a). Because we do not assert claims to recover a civil penalty under § 1592(c), the exhaustion requirements of § 1592(b) do not apply. Moreover, we have

stated a plausible claim for recovery of duties lost in the amount of $600,549.72 with respect to the Boycelik entries listed in Exhibit A (ECF No. 5-1) to our amended complaint (ECF No. 5). Through its broker and manufacturers, Boycelik itself has acknowledged that the merchandise it entered should have been classified under subheading 9404.29.90 in accordance with a prior U.S. Customs and Border Protection ("CBP") classification ruling covering like merchandise, and, thus, by definition and its own admission, it failed to exercise reasonable care in the entry of its merchandise.

## FACTUAL BACKGROUND

As explained in the amended complaint, from January 5, 2018, through on or about September 26, 2021, Boycelik imported into the United States certain merchandise (the "subject merchandise") consisting of mattress innerspring units, specifically pocket and bonnel spring units, manufactured by Boyçelik Metal Sanayi ve Ticaret AS and Serko Yay Sanayi ve Ticaret AS in the Republic of Turkey, under cover of approximately four hundred fifty (450) entries (the "subject entries") filed with CBP at various ports of entry. Am. Compl. ¶ 4, Ex. A.

Notably, in an *August 2011* CBP classification ruling (NY N175898), *i.e.*, more than six years before Boycelik imported any of the subject merchandise, CBP stated that the applicable subheading for innerspring units "made from bonnel spring coils joined to adjacent coils by helical lacing" would be HTSUS 9404.29.9010, with a 6 percent *ad valorem* duty rate. Ex. B; Am. Compl. ¶ 8. According to the ruling – which would have been easily accessible to Boycelik through CBP's public Customs Rulings Online Search System (CROSS) database – "[t]he innerspring units are not a mattress support (foundation or box spring) but a part of a sprung mattress."

In entering the subject merchandise, Boycelik falsely classified the innerspring units as mattress supports under Harmonized Tariff Schedule of the United States ("HTSUS") Subheading 9404.10.0000 (mattress supports), or, in some instances, under HTSUS 7326.20.0090 (articles of iron or steel wire, other). The correct classification for the subject entries is HTSUS 9404.29.90 (uncovered innerspring units). Am. Compl. ¶ 5.

Boycelik's false statements and/or omissions were material in that they had the potential to (and did) impact CBP's determinations of duties owed on the subject entries. As a result of its misclassifications, Boycelik either paid no duty at all, or a lower duty than it would have paid if it had properly classified the subject merchandise under HTSUS 9404.29.90. Am. Compl. ¶ 6.

After CBP notified Boycelik in March 2021 that Boycelik's classification might be incorrect, Boycelik, through its broker, specifically acknowledged that its classification under 9404.10.0000 was incorrect. As part of the same broker response, Boycelik's foreign manufacturers referenced the *August 2011* CBP classification ruling (NY N175898) discussed above and further confirmed that the subject merchandise had the "same specifications" as the merchandise described in the 2011 ruling letter. Am. Compl. ¶ 8.

As a result of Boycelik's materially false entries, the United States was deprived of lawful duties in the amount of $600,549.72. Am. Compl. ¶ 9, Ex. A.

On September 27, 2024, CBP issued Boycelik a demand for unpaid actual loss of duties in the amount of $600,549.72 covering 450 entries between January 5, 2018, and September 26, 2021. Ex. C[1]; Am. Compl. ¶ 10. This constituted CBP's "written notice" to Boycelik and satisfied its obligations under 19 C.F.R. § 162.79b (2026). The notice stated the amount of lost

[1] This written notice is similar in form and substance to the written notice sent to Boycelik on September 30, 2024 (Def. Mot. to Dismiss, Ex. 7), but the September 27, 2024 written notice was sent to Boycelik's previous legal counsel.

duties and how such loss was calculated in an "APPRAISAL WORKSHEET" itemizing the "[d]uty [d]ue" for each entry. Am. Compl., Ex. A.

To date, Boycelik has not paid any portion of the duties demanded on September 27, 2024. Am. Compl. ¶ 11.

From the time that CBP issued its demand for unpaid duties on September 27, 2024, through May 2026, the United States requested and Boycelik acquiesced to multiple waivers of the five-year statute of limitations in 19 U.S.C. § 1621 on claims for recovery of unpaid duties under § 1592(d). Government counsel sent the last statute of limitations waiver to Boycelik on May 11, 2026, attaching a document titled "20260511 - Boycelik SoL - ***65 days***.pdf" (emphasis added), and a cover email stating as follows:

> I have received an assessment from CBP of what you previously provided them regarding the entries, and we are currently examining how to respond to you based on what CBP has provided.
>
> Please find attached a ***65 day SoL*** waiver so we can continue to try and resolve this.

Def. Mot. to Dismiss, Ex. 5 (emphasis supplied).

The executed May 2026 statute of limitations waiver states as follows:

> Boycelik America, Inc. (Boycelik) hereby waives the period of limitations contained in 19 U.S.C. § 1621 and any other applicable statute(s) of limitations for a period of sixty (60) days with respect to the four hundred fifty (450) customs entries of mattress innersprings that were made between January 5, 2018, and September 26, 2021, that are purportedly the subject of a violation of 19 U.S.C. § 1592, as set forth in the September 27, 2024 duty demand in the amount of $600,549.72. ***The sixty-five (65) day period for this waiver commences on May 19, 2026, the expiration date of the previous waiver executed on March 19, 2026, and extends to and includes July 23, 2026.***
>
> Boycelik agrees that it will not assert any statute of limitations defense in any action brought by the United States Government

> concerning the above-referenced entries with respect to the sixty day period for which the statute(s) of limitations are hereby waived.
>
> This waiver is made knowingly and voluntarily by Boycelik.

Def. Mot. to Dismiss, Ex. 4 (emphasis supplied).

Boycelik maintains that its representative signed the last statute of limitations waiver on May 13, 2026. Def. Mot. to Dismiss at 27 (citing Ex. 4 to the motion). However, the date on which Boycelik signed the statute of limitations waiver has no bearing on when the final statute of limitations waiver period commenced or expired as the waiver itself explicitly states that the sixty-five (65) day period for this waiver commences on May 19, 2026, and extends until July 23, 2026.

The United States filed the complaint on July 23, 2026, which was within the statute of limitations period, as extended by the May 2026 statute of limitations waiver. The United States amended the complaint on August 7, 2026, only to remove the name of CBP counsel from the signature block of the pleading.

## ARGUMENT

### I. Standard of Review

A USCIT R. 12(b)(6) motion involves testing the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (4th ed. 2024) (discussing Federal Rules of Civil Procedure Rule 12(b)(6)). The related USCIT R. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." As Boycelik has acknowledged, "the complaint need not show a probability of plaintiff's success, but it must

demonstrate more than a mere possibility of a right to relief." Def. Mot. to Dismiss at 8 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A "claim" requires a cognizable cause of action, *i.e.*, operative facts giving rise to a right to payment or an equitable remedy. Def. Mot. to Dismiss at 8 (citing *United States v. Lexjet, LLC*, 822 F. Supp.3d 1336, 1340 (Ct. Int'l Trade 2026)) (citing *Rundgren v. Washington Mut. Bank, FA*, 760 F.3d 1056, 1061 (9th Cir. 2014)). "Thus, a party seeking affirmative relief must identify a substantive cause of action that authorizes the relief it requests." *Lexjet*, 822 F. Supp.3d at 1340. To survive a motion to dismiss for failure to state a claim, a complaint must also contain sufficient factual matter to state a claim to relief that is plausible on its face. *Twombly,* 550 U.S. at 556; *Iqbal*, 556 U.S. at 678; *United States v. Nitek Elecs., Inc.*, 844 F. Supp.2d 1298, 1302 (Ct. Int'l Trade 2012), *aff'd*, 806 F.3d 1376 (Fed. Cir. 2015).

The factual content of a claim must allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In considering the motion to dismiss, the Court "assumes all factual allegations to be true and draws all reasonable inferences in plaintiff's favor." *Carl v. U.S. Secretary of Agriculture*, 839 F. Supp.2d 1351, 1352 (Ct. Int'l Trade 2012). "Dismissal for failure to state a claim is proper only when it is beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief." *Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1335 (Fed. Cir. 2015) (citing *Amoco Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000)).

## II. The Statute of Limitations Did Not Expire before the United States Filed its Complaint in this Action

Boycelik argues that the United States is barred from bringing this action as to most entries identified by the complaint because it did so more than five years after the date of the alleged violation. But the complaint was filed by the waiver end-date of July 23, 2026, and was thus not untimely.

Boycelik argues that the waiver end-date was July 13, 2026, because "there are two deadlines referenced: July 13, 2026 (60 days after the execution date of May 13, 2026) and July 23, 2026 (65 days after the operative date of May 19, 2026)" and "[t]he Government drafted this waiver; therefore, the ambiguous language should be construed against the Government." Def. Mot. to Dismiss at 27. However, **the only end-date specified in the waiver is July 23, 2026**. Def. Mot. to Dismiss, Ex. 4 ("The **sixty-five (65)** day period for this waiver commences on May 19, 2026, the expiration date of the previous waiver executed on March 19, 2026, and extends to and includes **July 23, 2026**" (emphasis added)).

The reference to 60 days (rather than 65 days) in the statute of limitations waiver can be explained as a harmless clerical error that likely resulted from the use of the previous waiver, which was for 60 days, as a template. In the final waiver, there is only one end-date specified and thus no ambiguity as to the waiver end-date. This resolves any potential ambiguity as to the number of days for the waiver.

In addition to the text of the waiver itself, the Government's cover email to Boycelik also explicitly stated that the waiver was for a period of 65 days. Def. Mot. to Dismiss, Ex. 5 at 2 (email from Dan Hoffman, former counsel of record for the Government, stating: "Please find attached a **65 day** SoL waiver so we can continue to try and resolve this" (emphasis added)). Further, the title of the electronic document also confirms the length of the waiver period – "20260511 - Boycelik SoL - **65 days**.pdf" (emphasis added).

Boycelik has egregiously misrepresented the content of the May 13, 2026 statute of limitations waiver. Again, Boycelik states that "[i]n this waiver, there are two deadlines referenced: July 13, 2026 (60 days after the execution date of May 13, 2026) and July 23, 2026 (65 days after the operative date of May 19, 2026)." Def. Mot. to Dismiss at 27 (also stating in footnote that "[s]ixty days from the date of the May 13, 2026 execution is July 12, 2026. July 12 was a Sunday, which would place the end of the waiver period on Monday, July 13, 2026"). However, the specified waiver document, Def. Mot. to Dismiss, Ex. 4, does not reference the date July 13, 2026, nor does it contain any language stating that a 60-day waiver period commenced on the date the waiver was executed by Boycelik on May 13, 2026. Rather, the document itself unequivocally provides that "[t]he sixty-five (65) day period for this waiver commences on *May 19, 2026*, the expiration date of the previous waiver executed on March 19, 2026, and extends to and includes July 23, 2026." Def. Mot. to Dismiss, Ex. 4 (emphasis added).

To be sure, for previous waivers, when the parties wanted to commence the statute of limitations waiver period on the date the waiver was executed, they did so expressly. For instance, in the first statute of limitations waiver that Boycelik signed regarding these entries on September 25, 2023, Boycelik agreed to waive the statute of limitations for a two-year period. Ex. D. That waiver expressly provided that "[t]he two-year period for this initial waiver commences with the date of execution." *Id.* Thereafter, each of the parties' statute of limitations waivers commenced on the date the prior statute of limitations waiver expired, not on the execution date of each subsequent waiver. *See* Exs. E-K.

Regardless of any purported "execution date," the language of the waiver itself clearly provides a commencement date for the new 65-day period of May 19, 2026, and an end date of July 23, 2026, which is, in fact, 65 days after May 19, 2026. So, not only is Boycelik's

purported execution date irrelevant to the calculation of the waiver end-date, the text of the waiver does not refer to any other dates that contradict the explicitly stated commencement and end dates. As such, Boycelik's statement distorts the content of the document.

Boycelik places significant emphasis on *United States v. Inn Foods*, 264 F. Supp.2d 1333 (Ct. Int'l Trade 2003), *rev'd*, 383 F.3d 1319 (Fed. Cir. 2004), to support its position that the language in the statute of limitations waiver should be interpreted against the Government as drafter. However, as Boycelik admits, the Court of International Trade found the language in *Inn Foods* to be unambiguous and thus was not construed against the drafter. Def. Mot. to Dismiss at 27. This case warrants the same result. As discussed above, the ambiguity alleged by Boycelik is illusory. Accordingly, Boycelik's invocation of *Inn Foods* is inapposite.

Alternatively, even if the complaint was not filed by the alleged waiver end-date of July 13, 2026 (a date that is not identified anywhere in the statute of limitations waiver of May 2026), there would still be entries for which the statute of limitations would not have expired as of that date, so it would be improper to dismiss the complaint in its entirety. *See* Am. Compl., Ex. A at 11-12.[2]

## III. The Government Processed All Administrative Notices, Petitions for Relief, and Demands for Payment in Accordance with Applicable Laws and Procedures

Boycelik argues that the United States "has not complied with the statutory mandate that requires the disclosure of all the material facts establishing an alleged violation under Section

[2] For the sake of argument, the statute of limitations for all entries that were entered after July 23, 2021, would not have expired as of July 23, 2026, the date on which the complaint was filed. *See* Def. Mot. to Dismiss at 27 (acknowledging that "[m]any" – but not all – "of the entries identified by the Amended Complaint and its appraisal worksheet occurred prior to July 23, 2021").

1592." Def. Mot. to Dismiss at 9 (citing 19 U.S.C. § 1592(b)(1) & (2)). However, Boycelik's claim is fatally flawed because the United States has brought a § 1592(d) claim for lost duties, not a penalty claim, and it is long-settled law that lost duties claims are not predicated on § 1592(b) exhaustion. *See United States v. Aegis Sec. Ins. Co.,* 398 F. Supp.2d 1354, 1356 (Ct. Int'l Trade 2005).

Section 1592(a) provides, in relevant part, that "no person, by fraud, gross negligence, or negligence-- (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of-- (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false…." 19 U.S.C. § 1592(a).

Section 1592(d) provides that "if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this section, [Customs] shall require that such lawful duties, taxes, and fees be restored, *whether or not a monetary penalty is assessed.*" 19 U.S.C. § 1592(d) (emphasis added).

Outside of the duty demand, the statute and regulations provide for no process in issuing a duty demand that is similar to that required for imposing a penalty against an importer of record. *See* 19 C.F.R. pt. 171, app. B(J) (2026); 19 C.F.R. § 162.79b. Rather, all that is required when CBP seeks to collect unpaid duties as a result of a Section 1592 violation is "written notice." *See United States v. Ross,* 574 F. Supp. 1067, 1069 (Ct. Int'l Trade 1983) (lawful duties are to be restored within 30 days of written notice and "the provisions concerning the prepenalty notice, penalty notice, etc., do not apply when the United States is seeking restoration of lawful duties"); 19 C.F.R. § 162.79b. Specifically, the regulation provides that:

> [T]he port director will issue a written notice of the liability for the actual loss of duties, taxes and fees or actual loss of revenue. The

> notice will identify the merchandise and entries involved, state the loss of duties, taxes and fees or loss of revenue and how it was calculated and require that the person deposit or arrange for payment of the duties, taxes and fees or revenue within 30 days from the date of the notice. Any determination of actual loss of duties, taxes and fees or actual loss of revenue under this section is subject to review upon written application to the Commissioner of Customs.

19 C.F.R. § 162.79b.

CBP properly provided such "written notice" to Boycelik by issuing a demand to it on September 27, 2024 for unpaid actual loss of duties in the amount of $600,549.72 covering 450 entries between January 5, 2018, and September 26, 2021. Am. Compl. ¶ 10. This notice stated the amount of lost duties and how such loss was calculated in an "APPRAISAL WORKSHEET" itemizing the "[d]uty [d]ue" for each entry. Am. Compl., Ex. A. To date, Boycelik has not paid any portion of the duties demanded on September 27, 2024. Am. Compl. ¶ 11.

Government claims to recover lost revenue pursuant to § 1592(d) are independent causes of action, and the "government's right to recover unpaid duties under section 1592(d) does not depend on its right to obtain penalties pursuant to section 1592(c)." *Nitek Elecs.*, 844 F. Supp.2d at 1309 (quoting *United States v. Jac Natori Co.,* 108 F.3d 295, 299 (Fed. Cir. 1997)); *see United States v. Inn Foods, Inc.,* 560 F.3d 1338, 1348 (Fed. Cir. 2009) (noting that § 1592(d) action exists even if Customs chooses not to assess penalty (citing H.R. Rep. No. 95–621, at 16 (1977)).

Accordingly, the Government need not exhaust administrative remedies prior to seeking recovery of lost duties. *See Aegis Sec. Ins. Co.,* 398 F. Supp.2d at 1356; *accord United States v. Katana Racing, Inc.*, 75 F.4th 1346, 1351 (Fed. Cir. 2023) (§ 1592(b)) "by its own terms, only applies to penalty claims for violations of § 1592(a), as opposed to restoration of 'lawful duties' under § 1592(d)"); *United States v. Katana Racing, Inc.*, 724 F. Supp.3d 1366, 1374-76 (Ct. Int'l Trade 2024) ("when a penalty is not assessed, as here, the statute does not mandate the

performance of the procedures under § 1592(b)" and "it would be inappropriate for the court to create further administrative procedure requirements through application of the catch-all provision of 28 U.S.C. § 2637(d)" where defendant has "not alleged what additional administrative procedures might be required beyond those set forth in subsection (b)"); *see also Ross,* 574 F. Supp. at 1069 ("Section 1592(d), taken at face-value, demonstrates that the United States need not follow the elaborate penalty procedures when pursuing a duty claim. Subsections (b) and (c) of 1592 are cast in such terms as "monetary penalty" or "penalty claim." Subsection (d) alone deals with "lawful duties" and makes no reference to the preceding matters. . . . [T]he provisions concerning the prepenalty notice, penalty notice, etc., do not apply when the United States is seeking restoration of lawful duties.").

## IV. Boycelik Has Not Satisfied Its Burden of Proving It Exercised Reasonable Care in the Entry of Its Merchandise

As in *Nitek*, the United States has alleged a violation of § 1592(a) that deprived the United States of lawful duties, the payment for which Boycelik is responsible. Am. Compl. ¶¶ 5-6. These are "the essential elements of § 1592(d) liability." *Aegis Sec. Ins. Co.,* 398 F. Supp.2d at 1356. The United States thus states a plausible claim for recovery of duties lost on the entries listed in its complaint, *see Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570), and the standard for dismissal of the Government's case is not met.

As discussed above, Section 1592(a) prohibits fraudulently or negligently entering merchandise into U.S. commerce by means of "material and false" statements. Section 1592(d) provides the United States with a remedy for the restoration of any deprivation of lawful duties, taxes, or fees as a result of a violation of Section 1592(a).

The United States' cognizable cause of action is a Section 1592(a) claim that Boycelik has deprived it of lawful duties through its negligence and the United States has a right to payment of those duties based on Section 1592(d). The operative facts giving rise to a right to payment or an equitable remedy are that Boycelik repeatedly made "material and false" statements (*i.e.*, misclassifications) when entering the subject merchandise under Subheading 9404.10.0000 rather than the correct classification, Subheading 9404.29.90.

In order for a statement, document, or act to be considered material it must have "natural tendency to influence or [be] capable of influencing agency action including, but not limited to a Customs action regarding . . . determination of an importer's liability for duty. . . ." *United States v. Franco Tire Distribution, Inc.*, No. 24-00161, 2026 WL 1749520 (Ct. Int'l Trade June 17, 2026) (quoting 19 C.F.R. pt. 171, app. B); *see also United States v. Optrex Am., Inc.*, 560 F. Supp.2d 1326, 1336 (Ct. Int'l Trade 2008) (CIT has long held that "the classification of merchandise as presented in customs entry documentation has the tendency to influence Customs' decision in assessing duties and therefore constitutes a material statement under [Section 1592]"). Boycelik can challenge this presumption of materiality as these proceedings progress based on facts to be discovered, but the Government has at least presented a plausible claim for relief in its complaint, which is sufficient to survive Boycelik's motion to dismiss.

As explained in the amended complaint, every importer of record must exercise reasonable care in entering merchandise into the United States. *See* 19 U.S.C. § 1484(a)(1). Here, Boycelik's repeated failure to correctly classify the subject merchandise resulted from its failure to exercise reasonable care to ensure that the statements it made in its entries were accurate. Am. Compl. ¶ 7.

Here, Boycelik (or its broker) should have followed the CBP classification ruling NY N175898, dated August 5, 2011, which would have been easily accessible through CBP's public CROSS database. This ruling predated Boycelik's importation of the subject merchandise and covered the same merchandise. It concluded that the correct classification for innerspring units made from bonnel spring coils joined to adjacent coils by helical lacing and finished with a border wire is HTSUS 9404.29.9010. Am. Compl. ¶ 8. Notably, Boycelik, through its broker, informed the CBP that Boycelik's two suppliers both agreed that 9404.10.0000 is incorrect and confirmed that the products identified in NY N175898 as being classified under HTSUS 9404.29.9010 have the same specifications as their products. Am. Compl. ¶ 8. This wholly undercuts Boycelik's argument that the disagreement over the correct classification was merely a reasonable professional disagreement and not evidence of a lack of reasonable care. Boycelik had a duty of reasonable care to follow Customs' rulings covering merchandise with the same specifications. If it disagreed on the applicability of the ruling, the reasonably professional course would have been to follow the prior ruling on its Form 7501 entry papers and then challenge the classification before CBP, either by suspending liquidation and seeking an advance filing ruling or allowing the entries to liquidate and then protesting CBP's classification of the merchandise. *See* 19 C.F.R. pt. 177; 19 C.F.R. pt. 174.

Further, Boycelik's contention that it acted reasonably in relying upon a customs broker does not tip the scales in its favor. It is well settled that the importer bears the responsibility for classification of its merchandise. *Optrex Am., Inc.*, 560 F. Supp. at 1339 (rejecting importer of record's attempt to shift responsibility for classification to its customs broker); *see also United States v. Sterling Footwear, Inc.*, 279 F. Supp.3d 1113, 1139 (Ct. Int'l Trade 2017) (same). As a

matter of law, Boycelik's attempt to shirk its responsibility by blaming its customs broker hits a dead end.

Finally, Boycelik's motion to dismiss cannot succeed on the basis that Boycelik's preferred classification is the correct one. Even if it is a "close call" (which is denied), it would be premature to dismiss the United States' claim on grounds that 9404.10.0000 is the correct classification, based on various reasons set out in Boycelik's lengthy Section A of its Motion to Dismiss, which highlights facts that go well beyond the scope of the amended complaint. *See, e.g.*, Def. Mot. to Dismiss at 6-7 (discussing details of various notices not discussed in the amended complaint) and 13-14 (discussing the composition of the subject merchandise and why Boycelik considers its preferred classification to be more accurate).

Any classification analysis needed would be a fact-intensive exercise, and this can only take place after fact discovery and further briefing. On merits issues, the parties must meet their burdens of proof regarding negligence by a preponderance of the evidence, and the Court may only determine liability as a matter of law when the uncontroverted facts support such a determination. Now is not the time or place for such a determination.

Based on the above, the United States has at least presented a plausible prima facie case – *i.e.*, more than a mere possibility of a right to relief – that Boycelik failed to exercise reasonable care in its classification of the subject merchandise and, thus, that the United States is entitled to the lost duties. This is sufficient to survive Boycelik's motion to dismiss.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court deny Boycelik's motion to dismiss.

Respectfully Submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

By: /s/ Arie C. Eernisse

ARIE C. EERNISSE
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, NY 10278
Telephone: (202) 598-0904
Email: Arie.Eernisse@usdoj.gov

*Attorneys for Plaintiff*

November 24, 2026

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing submission complies with the word-limitation set forth in the Standard Chambers Procedure 2(B)(1) and contains 4,752 words.

/s/ Arie C. Eernisse

Dated: November 24, 2026

Arie C. Eernisse